JAMES E. MORAN *vs.* OTIS ELEVATOR COMPANY.

Suffolk.   May 13, 1935. — June 26, 1935.

Present: RUGG, C.J., PIERCE, DONAHUE, LUMMUS, & QUA, JJ.

*Practice, Civil,* Requests, rulings and instructions, Argument of counsel. *Evidence,* Competency.  *Witness,* Refreshment of recollection.

Following full instructions to the jury on the contested issues at the trial of an action, there was no reversible error in the giving of a requested ruling which could not, as was contended, have been so understood by the jury as unduly to limit the effect of the previous instructions; nor in the refusal of a ruling whose subject matter had been covered by such instructions; nor in the refusal of a ruling pertaining to a question as to which there was no evidence.

One party's calling for and inspecting a paper from which a witness has refreshed his memory does not make the paper itself evidence for the other party.

No reversible error appeared on the record in certain action of a trial judge in the matter of counsel's argument to the jury as to the failure of the opposing counsel to put a certain paper in evidence.

On redirect examination of a witness, it was proper to allow counsel to show him, for the purpose of refreshing his memory, all of a written statement which he had made, although on cross-examination the opposing counsel had shown him only a small portion of the statement for that purpose.

TORT.   Writ dated July 19, 1930.

The action was tried in the Superior Court before *Keating,* J.  There was a verdict for the defendant.  The plaintiff alleged exceptions.

*F. G. Bauer,* (*B. Berenson* with him,) for the plaintiff.

*K. C. Parker,* for the defendant.

PIERCE, J.   This is an action of tort brought by the plaintiff to recover for personal injuries received on June 26, 1930, upon the premises of the Sears, Roebuck & Co., in Boston, where construction work was in progress upon an addition to a building.  The jury returned a verdict for the defendant, and the case is before this court on the plaintiff's exceptions to rulings and refusals to rule of the trial judge.

All the material evidence is shown by the record and the pertinent facts succinctly stated are as follows: The general contractor was the Turner Construction Company. The plaintiff was an employee of a subcontractor, the Variety Fire Door Company. The defendant Otis Elevator Company had a contract direct with the Sears, Roebuck & Co. covering the installation of an elevator. The plaintiff at the time he received his injuries was upon the first floor and was injured by having his head caught between the halves of a vertically moving door which was designed to guard the wellway when the elevator was installed. The doors were of a peculiar patented type operating vertically, each door consisting of two halves or leaves which were counterbalanced on each other, so that when the door was opened the upper half raised to the lintel and the lower half sunk even with the floor. Each half was approximately twelve feet long and four and one half feet wide and was composed of corrugated iron, the corrugations running vertically, with an iron or steel plate at the top and bottom. The doors were so hung that when one half of a door was moved vertically it automatically moved the other. In other words, pushing up on the upper half of the door lowered the lower half, and vice versa. The doors were all hung in the same plane and the space between the lintel of each door and the floor above was slightly less than the width of the half door, so that when the doors on any floor were opened this automatically closed the doors on the two adjoining floors because the lower half of any door and the upper half of the door below occupied the same space when opened. The elevator was not installed at the time of the accident, nor had work sufficiently progressed so that the electrical connections were made, which, when the elevator is working, prevent more than one door being opened at a time.

The plaintiff was working on the first floor when injured and the injury was caused by the basement doors being fully opened, thereby closing the first floor doors and catching the plaintiff's head between them. Prior to the time of the accident on the morning in question, the basement

doors were open except for about twenty inches at top and bottom. It was undisputed that Schofield, the defendant's foreman, with some assistance opened the basement doors the remaining distance. There was evidence for the plaintiff that Schofield and his helper opened the doors; and there was evidence that Schofield opened the doors with the assistance of an unidentified person. The judge in his charge stated that there was evidence, denied by Schofield and one or more other witnesses, that the plaintiff that morning told Schofield "that he and his men were going to work on the checker plate [a part of the threshold] on the first floor, and not to use the well, or to have him use the well until they had finished, and that they would take until about noon." The judge further charged: "There is evidence that when Schofield arrived there with his men that morning, they went down a flight of stairs to the basement floor . . . and there was evidence that Moran [the plaintiff] and his men went toward the door of the elevator well on the first floor. . . . There is also evidence that the foreman of the Turner Construction Company's men, who were down in the basement . . . about two minutes before the accident occurred . . . heard Moran . . . say from above to those below, 'Don't touch the door.' . . . Schofield says that nothing of that kind was said to him by Moran . . . Schofield and the witnesses produced by the defendant [testified in substance] that just before Schofield put his foot on the door with a view to pressing it downward, opening it, men in the pit said, 'Open the door,' and that a voice said, 'All right. Open the door' . . . [and there was testimony] that no one in the pit said, 'Open the doors.'" The trial judge instructed the jury at length and with great particularity as to the liability of the defendant and the weight to be given to conflicting testimony. No exception was taken to the instruction "The burden is on the plaintiff to prove, by a fair preponderance of the evidence, first that there was a negligent act on the part of Schofield, and secondly, that that negligent act was within the scope of the employment of Schofield, as an employee of the Otis Elevator Company."

At the end of the charge the trial judge gave request numbered 5 of the defendant which reads: "The burden of proof is on the plaintiff to satisfy you that Schofield's act in opening the basement doors was part of his duty under his employment with the defendant, and unless you are so satisfied, the plaintiff cannot recover." It is the contention of the plaintiff that this request limited the language used earlier in the charge to the question whether or not the opening of the doors was a part of Schofield's duty. In a word, the contention is that by reason of the phrasing of the request the plaintiff was required to prove specifically that it was a part of Schofield's duty to open the doors. It is plain the jury could not have so misunderstood the charge earlier given.

The judge refused to give the plaintiff's request numbered 7 which reads: "If Schofield for some purpose connected with his employment, opened the basement doors without using due care to ascertain whether anyone was or would be likely to be endangered thereby, the defendant is not relieved from liability because someone else may have had something to do with opening the doors or with removing the blocks on them." As we understand the exception to the refusal to give request 7, it consists in the contention that the jury in addition to the instructions given should have been further instructed as to the effect or noneffect of the fact that there had been blocks in position which prevented the doors from being opened, regardless of the question whether the removal of the blocks was a mere condition or a part of the cause of the accident. We find no reversible error in the refusal to give the plaintiff's elemental rule of law formulated in his request numbered 2, which reads: "The duty devolved upon the defendant so to arrange the performance of its work, in so far as reasonably possible, that workmen of the Variety Fire Door Company should not be exposed to any unnecessary danger without any warning." The judge refused to give the plaintiff's eighth request which reads: "If Schofield in opening the doors acted with a complete indifference to or reckless disregard of the probable consequence of his so doing, the

plaintiff is not barred from recovery even though some negligence on his part did contribute to the injury." There is no evidence reported that would have warranted a jury finding that the conduct of Schofield in moving the doors was wilful, wanton or reckless, or that it was conduct or acts done without the slightest consideration for the safety of whomsoever might happen to be in the way.

During the cross-examination of a witness named Yetman, called by the plaintiff, the witness testified that within less than a week after the accident he had given a written statement to counsel for the plaintiff and shortly before testifying he had read it over to refresh his recollection. Counsel for the defendant then called for the statement and it was produced by the plaintiff's counsel. After examination the defendant's counsel returned it to the plaintiff's counsel. On redirect examination the paper was then shown the witness who, refreshing his recollection from it, testified that he gave it on July 8, 1930, and that having read it he did not wish to change his testimony in any way. The plaintiff offered the paper in evidence and excepted to its exclusion by the judge. During the argument the plaintiff's counsel stated to the jury in reference to the statement in the paper: "If you remember, my brother called for the statement that Mr. Yetman gave me, and examined it, but he did not put it in evidence as he did the other statements for which he called, from which I believe you have a right to infer that one of two things is the case: either that there was something in it which my brother did not want you gentlemen to see or that it did not contradict Mr. Yetman's testimony on the stand." Upon objection to this argument by the defendant the judge asked the plaintiff's counsel if it was not equally open to him to have offered the statement himself. Counsel for the plaintiff then pointed out to the judge that it was to introduce the statement in evidence that he had tried to get the paper in as it was a statement the witness had used to refresh his recollection. The judge then ruled that "It is proper for you to say to the jury that the failure of counsel to offer it in evidence warranted it in inferring that the paper did refresh the memory

of the witness." When this ruling was made the plaintiff took no exception, but after the close of his argument and after a recess, asked the judge "to withdraw so much of the statement as stated that . . . [he] could have offered it in evidence." The judge declined to say anything further and the plaintiff excepted. There was no error in excluding the paper when offered by counsel for the plaintiff. *Shear* v. *Rogoff*, 288 Mass. 357, 362, 363, and cases cited. There was nothing in the refusal of the judge to make further comment on his ruling which can justly be characterized as unfair treatment, or a lack of judicial impartiality, as the plaintiff contends.

The defendant called as a witness one Newcomb, an employee of the insurance company which represented the Turner Construction Company. On cross-examination the witness, having been shown a single line of a statement contained on two pages of paper which embodied the report of his investigation, refreshed his recollection and said that a witness, Walsh, had stated that he did not like the plaintiff and there was no reason why he should help the plaintiff out in this case. On redirect examination the defendant called for the paper but counsel for the plaintiff objected to showing him more than the line which he had shown the witness. It appeared that the entire paper statement was written by the witness. In the circumstances of this case, if in fact the witness read only one line of the writing it may have been that what followed upon the paper would give a different sense or meaning to the portion which he had read, so that the reading of but a part would not fairly refresh his memory. *Shear* v. *Rogoff*, 288 Mass. 357, 362, 363, and cases cited.

We find no prejudicial error in the foregoing rulings and refusals to rule.

*Exceptions overruled.*